**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NIKA CAMAJ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| | )    Civil Action No.: 26-CV-10011-AK |
| v. | ) |
| | ) |
| ANTONE MONIZ, Superintendent, | ) |
| Plymouth, Correctional Facility; | ) |
| PATRICIA HYDE, Field Office Director; | ) |
| MICHAEL KROL, HSI New England | ) |
| Special Agent in Charge; | ) |
| TODD LYONS, Acting Director, U.S. | ) |
| Immigration and Customs Enforcement; | ) |
| and KRISTI NOEM, U.S. Secretary of | ) |
| of Homeland Security, | ) |
| | ) |
| Respondents. | ) |
| | ) |

**MEMORANDUM AND ORDER ON**
**PETITION FOR A WRIT OF HABEAS CORPUS**

**ANGEL KELLEY, D.J.**

Petitioner Nika Camaj ("Petitioner" or "Camaj") brings this Petition for Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2241 ("Petition") challenging his immigration detention by U.S.

Immigration and Customs Enforcement ("ICE") since March 28, 2025. [Dkt. 1].  Respondents

oppose the Petition, claiming Camaj has been properly detained under 8 U.S.C. § 1231. [Dkt. 9].

For the following reasons, the Petition is **GRANTED**.  Camaj's Motion for Bail Hearing [Dkt.

16] is **DENIED AS MOOT**.

    **I.**       **BACKGROUND**

Camaj is a 50-years-old noncitizen, who has resided in the United States for over 40

years. [Dkt. 1 ¶ 16, 20].  He was born on July 26, 1975, in Italy, but is not a citizen of Italy as he

1

was born when his parents were in refuge in Italy. [Id. at ¶ 19].  In 1976, Camaj and his family were deported from Italy to what was then known as Yugoslavia. [Id.].  On April 23, 1985, Camaj entered the United States on a nonimmigrant B-2 visa with his family. [Id. at ¶ 20; Dkt. 9 at 2].  He has resided in the United States since.

On February 28, 1996, Camaj was granted asylum in the United States as a derivative of his father's application. [Dkt. 1 at ¶ 21].  While in the United States, Camaj has faced several criminal convictions,[1] and as a result, he was placed into removal proceedings on April 9, 2014. [Id. at ¶21; Dkt. 9 at 3].  On April 4, 2019, an immigration judge ordered Camaj removed to Montenegro, a successor state of Yugoslavia. [Dkt. 1 at ¶ 21].  Camaj contends that he does not have citizenship of Montenegro and nor can he obtain one by descent because his parents are now United States citizens—Montenegro does not allow dual citizenship. [Id. at ¶ 22-23].  Camaj thus claims to be stateless, having no recognized citizenship in any country. [Id. at ¶ 16].  Respondents claim that Camaj was in fact released on his own recognizance after the final order of removal. [Dkt. 9 at 3].

On or about March 28, 2025, ICE arrested Camaj when the U.S. Bureau of Prisons ("BOP") released Camaj to supervised release from the Danbury Federal Correctional Facility in Danbury, Connecticut following completion of his term in custody following a conviction for wire fraud. [Dkt. 9 at 3; Dkt. 1 ¶ 1].  Camaj has been detained in ICE custody since—for over 13 months.  ICE claims to have conducted a 90-days post order custody review ("POCR") on June 24, 2025 and further requested the Headquarters Post-Order Detention Unit to conduct a 180-days POCR review on September 29, 2025. [Dkt. 9 at 3].  Camaj, however, contends he did not

---

[1] Convictions for: (a) burglary in the third degree by Rensselaer County Criminal Court in Troy, New York on April 26, 2000; and (b) possession of a controlled substance in the seventh degree by Westchester County Court in White Plains, New York on October 23, 2003. [Dkt. 9 at 2].

receive any notice regarding the outcome of any custody review. [Dkt. 16-1 ¶ 4].  There has not been any evidence offered as to the process followed, factors considered, or the extent of Camaj's participation in the said custody reviews.  Just before the request to the Headquarters Post-Order Detention Unit, on September 23, 2025, ICE mailed a request for Camaj's travel documents to the Consulate General of Montenegro in New York, New York.  The request remains pending. [Dkt. 9-1 ¶ 19].

On December 17, 2025, Camaj attempted to file a Form I-246, Stay of Removal, at the ICE office in Burlington, Massachusetts, but ICE refused to accept the application as Camaj did not have a valid passport. [Dkt. 16-1 ¶ 3].  Respondents, however, contend that "there is no record of ICE having received a Form I-246 pertaining to Petitioner." [Dkt. 9-1 ¶ 21].  On April 13, 2026 and April 14, 2026, Camaj contacted, through his counsel, ICE's Boston and Washington outreach email inboxes, for an update on status of his custody review. [Dkt. 16-1 ¶ 5-6].  To date, "there has been no response." [Id.].  There also appears to be no record of ICE's determination on custody review that ICE claims to have requested in September 2025.

## II.    LEGAL STANDARD

Section 2241 confers jurisdiction on this Court to order the release of any person who is held in the custody of the United States in violation of the "laws . . . of the United States" or the United States Constitution. 28 U.S.C. § 2241(c).  The burden rests on the person in custody to prove his detention is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009) (citing Walker v. Johnston, 312 U.S. 275, 286 (1941)).

### III.   DISCUSSION

#### A.  8 U.S.C. § 1231 and Zadvydas

The detention and removal of noncitizens with final orders of removal is governed by 8 U.S.C. § 1231 ("Section 1231").  Under Section 1231(a)(1)(A), "the Attorney General shall remove the alien from the United States within a period of 90 days," called the "removal period," following a final order of removal. 8 U.S.C. § 1231(a)(1)(A).  The removal period begins on the date the order of removal becomes administratively final. Id. § 1231(a)(1)(B)(i).  Importantly, "DHS need not wait for the alien to seek, and a court to complete, judicial review of the removal order before executing it.  Rather, once the BIA has reviewed the order (or the time for seeking the BIA's review has expired), DHS is free to remove the alien *unless* a court issues a stay." Johnson v. Guzman Chavez, 594 U.S. 523, 534-35 (2021) (emphasis in original).

"During the removal period, detention is mandatory." Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(2)).  After the removal period has passed, as in the instant case, detention is subject to a discretionary framework under Section 1231(a)(6), as opposed to Section 1231(a)(1)(A)'s mandatory framework.  Under Section 1231(a)(6), ICE may extend detention beyond the removal period for individuals either inadmissible to the United States pursuant to 8 U.S.C. § 1182; subject to certain grounds of removability from the United States pursuant to 8 U.S.C. § 1227; or for those whom immigration authorities have determined to be a risk to the community or unlikely to comply with the order of removal.  If a noncitizen falls under any of these categories and is nonetheless released, their release "shall be subject to the terms of [8 U.S.C. § 1231(a)(3)]." 8 U.S.C. § 1231(a)(6).

Detention under Section 1231 cannot be indefinite. Zadvydas v. Davis, 533 U.S. 678, 689 (2001).  Zadvydas limits the duration of post-removal-period detention "to a period reasonably

4

necessary to bring about that alien's removal from the United States." Id.  Federal courts are authorized to determine reasonableness, and the courts should do so "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." Id. at 699.  Where "removal seems a remote possibility at best," "preventing flight" is a "weak or nonexistent" justification. Id. at 690.  "[W]here detention's goal is no longer practically attainable, detention no longer 'bear[s][a] reasonable relation to the purpose for which the individual [was] committed.'" Id. (quoting Jackson v. Indiana, 406 U.S. 715, 738 (1972) (alteration in original)).

To support courts in the reasonableness determination, the Supreme Court found detention of up to 6 months as presumptively reasonable under Section 1231. Id. at 701.  "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.  "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." Id. at 699-700.

In the instant case, Camaj has been detained since March 28, 2025, that is, for over 13 months.  Under Zadvydas, Camaj's detention is thus presumptively unreasonable.  Further of note, Camaj was taken into ICE custody on March 28, 2025, nearly six years after his final order of removal entered on April 4, 2019.  Respondents made no effort to effectuate the removal in that time.  Rather, ICE released Camaj on his own recognizance after the removal order in 2019, and he remained so until March 28, 2025.  Even after Camaj's detention, Respondents did not take any step towards Camaj's removal until September 23, 2025—six months after his arrest—when Respondents merely mailed out a request to the Consulate General of Montenegro for

5

Camaj's travel documents.  Yet, there is no concrete timeline as to if or when Camaj may receive his travel documents.

The timeline for receiving the travel document is even more important when considering Camaj's claim that he is stateless and unable to secure Montenegrin citizenship.  Respondents have offered nothing to controvert this claim.  Respondents agree that Camaj was born in Italy, has been ordered removed to Montenegro, and does not currently have a travel document.  Further, Camaj asserts that he could not even acquire Montenegrin citizenship, as his parents are now United States citizens and Montenegro does not permit dual citizenship, foreclosing Montenegrin citizenship by descent.  These facts, in addition to the government's failure to effectuate a 6-years old removal order and 6-months delay in requesting Camaj's travel documents, cumulatively constitute a "good reason to believe that there is no significant likelihood of [Camaj's] removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

The government's mere submission of a request for travel documents to the Consulate General of Montenegro does not adequately rebut the circumstances that form good reason to believe that Camaj will not likely be removed in the reasonably foreseeable future.  Therefore, the Court finds that Camaj's detention is no longer aligned with the purpose of the statute, that is, to secure Camaj's removal, and thus his prolonged detention is unlawful.

For the reasons discussed above, because Camaj has been detained beyond the presumptively reasonable period of 6 months with no significant likelihood of removal in the reasonably foreseeable future, the Court orders Petitioner released subject to a reasonable order of supervision pursuant to Sections 1231(a)(3) and 1231(a)(6).

**IV.    CONCLUSION**

For the foregoing reasons, Camaj's Petition [Dkt. 1] is **GRANTED**.  Respondents are

**ORDERED** to release Petitioner subject to a reasonable order of supervision pursuant to 8

U.S.C. §1231(a)(3),(6).  Camaj's Motion for Bail Hearing [Dkt. 16] is **DENIED AS MOOT**.

**SO ORDERED.**

Dated: May 15, 2026                                                    /s/ Angel Kelley
                                                                              Hon. Angel Kelley
                                                                              United States District Judge